## Salomons *v.* León.

Apelación procedente de la Corte de Distrito de Ponce.

No. 62.—Resuelto en abril 6, 1904.

Obligaciones—Contratos—Interpretación de los Mismos.—Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse a su tenor, y éstos no deben ser objeto de interpretación cuando su sentido sea claro y terminante, no siendo lícito desnaturalizar el sentido de sus cláusulas con interpretaciones violentas.

Id.—Cumplimiento de los Mismos—Indemnización.—En los casos en que una parte dejare de cumplir las estipulaciones convenidas en un contrato, procede obligarla al cumplimiento de las mismas y a la correspondiente indemnización de los daños y perjuicios a que su incumplimiento hubiere dado lugar.(*)

Id.—El incumplimiento por una parte, de las cláusulas establecidas en un contrato, en su propio beneficio y utilidad, a nadie más que a la misma parte pudiera perjudicar, y por consiguiente, no es procedente exigirle el cumplimiento de las expresadas cláusulas.

Costas—Falta de Temeridad.—No habiendo notoria y manifiesta temeridad en las partes litigantes y no desestimándose totalmente las pretensiones de una y otra, el pronunciamiento de costas debe hacerse sin especial condenación.

### EXPOSICIÓN DEL CASO.

En el juicio seguido ante el Tribunal de Distrito de Ponce, entre partes, de la una Doña Ana Salomons y Lind, demandante, y de la otra Don Esteban de León y Martínez, demandado, sobre cumplimiento de un contrato, cuyo juicio pende ante nos a virtud de recurso de casación, hoy de apelación, interpuesto por León y Martínez, contra la sentencia que dictó el referido tribunal, habiendo llevado la representación y defensa de la parte recurrente, ante esta Corte Suprema, el Letrado Don Antonio Alvarez Nava, y las de la recurrida, el Letrado Don José de Guzmán Benítez.

*Resultando:* que la expresada sentencia, dictada en 22 de julio de 1902, copiada a la letra dice así:

"*Sentencia.* En la ciudad de Ponce a los 22 días del mes de julio de 1902. *Visto* en juicio oral y público este pleito seguido en autos

declarativos y entre partes, de la una, como demandante, Doña Ana Salomons Lind, mayor de edad, viuda, y vecina de esta ciudad; representada por el Letrado Don Manuel León Parra; y de la otra como demandado Don Esteban de León y Martínez, mayor de edad, vecino de esta ciudad, propietario; representado por el Letrado Don Luciano Ortiz Antón; sobre cumplimiento de varias cláusulas de un contrato. Siendo Ponente para la redacción de esta sentencia el Sr. Juez Presidente Don Isidoro Soto Nussa.

"*Resultando:* que con fecha 17 de abril del corriente año Doña Ana Salomons y Lind, por medio del Letrado Sr. León Parra, estableció la presente demanda en juicio declarativo, contra Don Esteban de León y Martínez, solicitando se condenase a éste a que en el término que el tribunal fije, levante en los terrenos arrendados pastos de malojillo completamente libres de plantas dañosas, que puedan perjudicar a aquéllos, y además a que arregle los canales de riego para (*) aprovechar una concesión de agua que tiene dicha finca; apercibido que de no hacerlo, se efectuará a su costa, y que se le condene además al abono de los daños y perjuicios originados y que se originen a contar desde el día 15 de febrero del corriente año; y además al pago de las costas; fundando su demanda en los siguientes hechos: que en 4 de diciembre de 1893, ante el notario de esta ciudad, Don Joaquín Mayoral, la demandante celebró con el demandado un contrato de arrendamiento de la mitad proindivisa de su propiedad que tiene en la siguiente finca: 'Hacienda que fué de cañas dulces denominada ''Santa Cruz,'' radicada en el barrio de Bucaná de este término municipal, y tiene de cabida 250 cuerdas de terreno, equivalentes a 98 hectáreas, 25 áreas, 98 centiáreas de las cuales hay 180 cuerdas propias para caña y 70 cuerdas a pastos, malezas y salitrales; colindando por el norte con terrenos de la hacienda ''Isabel'' de la sucesión Oppenheimer y con un camino vecinal, por el este con la misma hacienda ''Isabel,'' por el sur con el mar; y por el oeste con el río Bucaná; siendo la parte de esta finca arrendada al Sr. León la misma que anteriormente la tuviera en arriendo Don Víctor Quiñones; que entre las varias condiciones estipuladas en dicho contrato figura la de que el arrendatario Don Esteban de León quedaba obligado a levantar pasto de malojillo sobre el terreno arrendado, cuyos pastos, a la terminación del contrato quedarían a beneficio de la arrendadora a la que debía entregarlos completamente limpios de toda planta que pueda serles perjudicial; que conteniendo la finca arrendada una concesión de aguas que no podía aprovecharse enton-

ces por estar cegadas todas las zanjas, el arrendatario León se comprometía a abrir desde luego, de su exclusiva cuenta, con el fin de utilizar dichas aguas, en la inteligencia que si después de arregladas las zanjas quisiera la arrendadora hacer uso de las aguas, podía hacerlo, pero sin causar perjuicio alguno a los derechos adquiridos por el arrendatario; que el contrato se celebró por el término de seis años, prorrogable a un año más si lo quisiere el Sr. León, contándose ese término desde el día 11 de septiembre de 1893; pero no fué devuelta la posesión de la finca hasta el 15 de febrero del corriente año porque al cumplirse el contrato e irse a hacer cargo de ella un hijo de la arrendadora, se encontró con que el Sr. León no había cumplido ninguno de los compromisos contraídos en el contrato público celebrado, pues los terrenos arrendados se hallaron completamente cubiertos de malezas, no se sembró en ellos yerba, malojillo y en cuanto a los canales de (*) riego, no ya sólo no realizó en ellos las recomposiciones a que se comprometió, sino que faltando a los cuidados indispensables de conservacion, habían desmerecido grandemente en poder del arrendatario, los que le entregaron al celebrar el contrato de arriendo; y que no obstante los ofrecimientos particulares que le hiciera el Sr. León, de cumplir el compromiso, no lo ha verificado.

"*Resultando:* que con el escrito de demanda se acompaña testimonio de la escritura del contrato de arrendamiento de que se hace mérito, y certificación de haber intentado el acto de conciliación.

"*Resultando:* que admitida la demanda, se dió traslado de ella al demandado Don Esteban de León y Martínez por término de 20 días, durante el cual se personó en los autos y contestó la demanda, confesando el *primero y segundo* de los hechos de ella, y alegando que una vez que empezó la vigencia del contrato, tanto en su propio beneficio, como para intentar el cumplimiento de una cláusula notoriamente imposible, por no haber medios de sembrar la mitad proindivisa de una finca sembró en la totalidad de ella yerba malojillo, y para cumplir en el propio beneficio como arrendatario la cláusula sexta que sólo en su favor se había puesto, procedió a limpiar las zanjas cegadas para utilizarse de las aguas dotación de la finca; que a consecuencia del ciclón que devastó esta Isla en 1899 la finca arrendada sufrió, como todas, los efectos de la inundación, cegándose las zanjas abiertas por él, destruyéndose y ensuciándose no poco del pasto que en ella había sembrado; que terminado el plazo del arrendamiento celebró con la demandante un nuevo contrato en el cual no existía esa cláusula referente a la siembra de yerba ni ninguna

184

de las demás cuyo cumplimiento se exige; y solicita, se declare sin lugar la demanda con imposición de las costas a la demandante.

"*Resultando:* que recibido el pleito a prueba, cada una de las partes propuso las suyas, y señalado el día 10 del actual para la celebración del juicio oral y la práctica de las pruebas, así se verificó informando en aquel acto los letrados de ambas partes lo que estimaron oportuno en defensa de sus respectivos derechos.

"*Resultando:* que de la prueba documental traída a los autos, aparece la celebración del contrato de arrendamiento verificado en la forma y bajo las condiciones señaladas por la demandante; que practicada una inspección ocular en los terrenos arrendados, en primero (*) del actual, aparecen aquéllos cubiertos de diferentes yerbas, entre ellas grama amarga, pata de gallina, y aromas, destacándose de vez en cuando algunos tallos de malojillo así como algunas manchas en otros sitios de esta última yerba; que en un extremo de la finca cerca del río, se encontraron restos de un canal en la entrada de las aguas en el cual se encuentra un trozo de él, donde estaba el módulo, no existiendo éste ni represa, no pudiendo entrar las aguas y encontrándose dicho canal en parte destruído y en parte sano; que Don Oscar Oppenheimer dió recibos a Don Esteban de León por 25 pesos uno, sin fecha, como resto del arrendamiento del mes de agosto, y otro por 75 pesos, fecha 5 de agosto de 1901, a cuenta del arrendamiento de la estancia 'Santa Cruz.'

"*Resultando:* que de la prueba de confesión por el demandado Don Esteban de León, que éste declara habérsele señalado por Don Oscar Oppenheimer, hijo de la demandante, el terreno que constituía la mitad de la finca que se le arrendaba; que el declarante arregló el canal, lo limpió e hizo una represa que no estaba en el contrato, cuya represa no existe hoy porque se la robaron; que dichos terrenos los hizo arar y los sembró de malojillo, construyendo un módulo que se lo llevó el río a los pocos días, que el canal lo tapó el río; que en el primer año del arrendamiento pagó 30 pesos mensuales como precio del mismo, en sucesivos años, hasta siete, pagó a razón de 70 pesos mensuales, y después, hizo un nuevo arrendamiento con Don Oscar Oppenheimer hijo de la Sra. Salomons, sin estipular otras condiciones que las de pagar $100 mensuales, cuyo precio vino satisfaciendo por espacio de un año y medio o sea hasta el 16 de febrero del corriente año en que dejó el arrendamiento, después de lo que, se metieron en los terrenos ganados de los Sres Saurí y Subirá; que los 100 pesos mensuales los dejaba algunas veces en poder de Don Julio Verne, y otras

en el del cuñado de Don Oscar, para que los entregara a éste; que: durante el arrendamiento sólo ha percibido dos recibos, uno de Don. Oscar y otro de su hermana.

"*Resultando:* de la prueba testifical, Don Oscar Oppenheimer ma-- nifiesta, que el Sr. de León sólo pagaba 60 pesos provinciales por el arrendamiento, y después del canje pagaba su equivalencia o sea: $36, que no celebró ningún contrato con León; que éste nunca pagó 25 pesos semanales ni 100 mensuales. Reconoció (*) los dos recibos: existentes en autos, y explica que ellos son de mensualidades atra- sadas; que de las cantidades que le pagaba León siempre le otor- gaba recibo por conducto de la misma persona con quien él le enviaba el dinero; no puede afirmar que el recibo de 25 pesos sea anterior al de 75, no recuerda la fecha en que autorizó el primero. Don Vi- cente Valdivieso y Torruella manifiesta que oyó a Don Oscar Oppen-- heimer y Don Esteban de León tratar del arrendamiento de la finca 'Santa Cruz' quedando León en arreglar aquélla bajo las mismas condiciones; no da más detalles. Don Emilio Ferí, mayordomo de la hacienda 'Estrella,' manifiesta que esta hacienda tiene arrendados los terrenos de la finca 'Santa Cruz,' los cuales están sembrados de yerba de hicotea que arranca el declarante porque no la come el ga- nado ni deja crecer el malojillo; no vió que León sembrara de esta yerba en esos terrenos ni sabe arreglara el canal; que cuando entró de mayordomo en dicha hacienda, encontró esos terrenos cembra- dos de malojillo en una parte. Don Ulises Clavel manifiesta que, desde hace seis u ocho años pasa con frecuencia por el camino de la finca 'Santa Cruz,' desde donde se distinguen 40 o 50 cuerdas de esos terrenos y nunca vió que León tuviera sembrado en ellos malo- jillo, que no vió tampoco que por el canal pasara agua nunca, igno- rando el porqué de eso. Don Carlos Torres manifiesta que la ha- cienda 'Restaurada' viene aprovechando las aguas del río que antes, aprovechaba la finca 'Santa Cruz,' la que desde hace mucho tiempo, no las utiliza por no tener canales y los que tenía están destruídos; que no vió los arreglase León y que si los hubiera arreglado lo hubiera visto el declarante, aunque en la época en que tuvo esos terrenos León no vió los canales. Alejo Marcos manifiesta que, hasta un año antes: del ciclón ni después de éste vió sembrar yerba malojillo en los terre- nos de la finca 'Santa Cruz,' ni arreglar sus canales. Don Julio Verne manifiesta que es cierta la entrega de dinero que le hacía León, la que efectuaba él a Don Oscar Oppenheimer sin percibir recibo; que: sabía procedía ese dinero del arrendamiento de la finca 'Santa Cruz,'"

y que León le indicaba siempre a qué semana se refería aquel pago, lo que trasmitía el declarante a Oppenheimer, y que tales entregas ocurrieron por los años 1900 y 1901. Juan Angel Rivera manifiesta que el Sr. León hizo cercas, limpieza y sembró yerba en los terrenos arrendados, que hizo en el río una represa y un módulo, y que hizo arreglar los canales. Don Juan Jorne y Juan Centeno, declaran en la misma forma que el anterior testigo.(*)

"*Resultando:* que señalado el día de hoy para la votación de la presente sentencia, lo fué por unanimidad.

"*Resultando:* que en este juicio, en su tramitación, se han cumplido las prescripciones de la ley.

"*Considerando:* que con arreglo al artículo 1091 del Código Civil las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos: no siendo lícito desnaturalizar el contenido de la obligación o de las cláusulas contractuales con interpretaciones rebuscadas o violentas cuando el sentido de ellas es claro y terminante.

"*Considerando:* que entre las cláusulas estipuladas en el contrato de arrendamiento celebrado entre las partes litigantes, según consta de la escritura presentada, existe la de que el arrendatario Don Esteban de León quedaba obligado a levantar pasto de malojillo en el terreno arrendado, cuyos pastos a la terminación del contrato quedarían a beneficio de la arrendadora, a la que debía entregarlos completamente limpios de toda planta que pudiera serles perjudicial, y la de que conteniendo la finca arrendada una concesión de aguas que no podía aprovecharse entonces por estar cegadas todas las zanjas, el mismo arrendatario León se comprometía a abrirlas desde luego, de su exclusiva cuenta, con el fin de utilizar dichas aguas; pudiendo la arrendadora hacer uso de ellas, pero sin causar perjuicio a los derechos adquiridos por el arrendatario.

"*Considerando:* en cuanto a la cláusula primera de las transcritas en el anterior considerando, que siendo claro y explícito el sentido literal de la misma no cabe argüirse de contrario que se trata de una cláusula de imposible ejecución bajo el pretexto banal de que el terreno arrendado se hallaba proindiviso, toda vez que este extremo quedó completamente desvirtuado durante el período probatorio según confesión del mismo arrendatario demandado, hecha ante el tribunal bajo la santidad del juramento, al firmar que Don Oscar Oppenheimer, hijo de la demandante, le había señalado el terreno que constituía la mitad de la finca que se le arrendaba; siendo por tanto evi-

dente que sobre esa porción deslindada, y no en otra era que el arrendatario debía levantar los pastos de malojillo a que dicha cláusula se refiere.

"*Considerando:* que la subsistencia de la referida cláusula no se halla tampoco desvirtuada en sus efectos, por cuanto no aparece comprobada (*) por ninguno de los medios de prueba que el derecho reconoce, la alegación opuesta por la parte demandada, de que terminado el plazo del arrendamiento, había celebrado con el demandante un nuevo contrato en el cual no existía esa cláusula ni la otra, a que se refiere el escrito de demanda: debiendo en su consecuencia tenerse por firme, subsistente y valedera para todos los efectos legales dicha cláusula primera.

"*Considerando:* que siendo esto así de la prueba de inspección ocular, la de confesión, la instrumental y la de testigos propuesta y practicada a instancia de la parte actora en el acto del juicio oral, aparece como un hecho probado, según la apreciación que ha hecho el tribunal sentenciador con arreglo a los dictados soberanos de su conciencia, que el arrendatario Don Esteban de León durante el término del contrato, ni al vencimiento, ni en ninguna otra ocasión en que se encontraba poseyendo el terreno arrendado, ha levantado ni sembrado la porción de terreno designádale, de pastos de malojillo según lo convenido, de tal modo, que al vencerse el contrato de referencia hubo de encontrarse la finca cubierta de diferentes yerbas tales como grama amarga, pata de gallina y aromas, destacándose sobre el terreno solamente y de vez en cuando algunos tallos de malojillo y algunas manchas de esta yerba en otras partes del mismo; todo lo cual convence plenamente de que el referido arrendatario dejó incumplida la cláusula estipulada y cuyo cumplimiento se exije en este juicio.

"*Considerando:* que siendo un precepto terminante de la Ley Civil sustantiva que la prueba de las obligaciones incumbe al que reclama su cumplimiento, y la de su extinción al que la opone, es de todo punto concluyente que habiendo justificado en este punto su derecho la parte actora, sin que la contraria haya constatado las alegaciones opuestas, procede desde luego declarar con lugar la demanda en la parte que se refiere a exigir el cumplimiento de la cláusula primera que se analiza, con los demás pronunciamientos subsidiarios de indemnización de daños y perjuicios irrogados por el incumplimiento de la misma.

"*Considerando:* que si es evidente y paladino cuanto se ha con-

siderado respecto al incumplimiento de la cláusula primera ya referida y a la obligación en que está el arrendatario demandado de cumplimentar en todas sus partes, no ocurre lo mismo en cuanto a la (*) cláusula segunda de las transcritas y que constituye otra de las condiciones o términos del contrato celebrado, si se tiene en cuenta la razón legal de que dicha cláusula o condición faccionada se estableció en contemplación del arrendatario y en beneficio y utilidad de su propia persona como tal arrendatario, único a quien después de todo importaba como mero explotador y usufructuador del terreno arrendado servirse de dichas aguas y poner las zanjas o canales en buenas condiciones para el discurso de las mismas, obteniendo con esta mejora el mayor rendimiento posible del terreno; siendo de todo punto evidente que el incumplimiento de dicha cláusula a nadie ha podido perjudicar más que al mismo arrendatario, en cuyo favor se había establecido.

"*Considerando:* que en ese sentido carese de fundamento legal la parte de la demanda que se refiere a exigir, el cumplimiento de la expresada cláusula segunda, no siendo por tanto procedente la reclamación que en este punto se deduce.

"*Considerando:* en cuanto a las costas que no ha existido temeridad notoria y manifiesta en las partes litigantes, y que las pretensiones de éstas, no han sido totalmente desestimadas; por esta consideración debe hacerse el pronunciamiento y declaración legal sin especial condenación.

"Vistos los artículos 1091, 1098, 1100, 1101, 1107, 1113, 1203, 1214, 1218, 1231, 1235, 1241, 1244, 1248, 1281, 1555, del Código Civil, no reformado, en relación con los pertinentes de la Ley de Enjuiciamiento Civil, y la Orden General No. 118, y jurisprudencia del Supremo aplicable al caso.

"*Fallamos:* que declarando con lugar la demanda interpuesta a nombre de Doña Ana Salomons y Lind en la parte que se refiere al primer extremo de la misma, con sus pronunciamientos subsidiarios, debemos condenar y condenamos al demandado Don Esteban de León y Martínez en su carácter legal de arrendatario, a que en el término de cinco meses naturales a contar desde la fecha en que sea firme esta sentencia, levante en el terreno arrendado los pastos de malojillo completamente libres de plantas dañosas, con la prevención que de no verificarlo se efectuará a su costa, y a la indemnización de los daños y perjuicios irrogados a la demandante con el incumplimiento de la

obligación primera pactada, los que deberán hacerse efectivos en la vía y forma que determina la Ley de Enjuiciamiento Civil.

"Asimismo debemos declarar y declaramos sin lugar dicha demanda en cuanto al otro extremo de su reclamación, absolviendo· de (*) ella al demandado Don Esteban de León, sin hacer especial condenación de costas en ambos pronunciamientos. Así lo pronunciamos, mandamos y firmamos: Isidoro Soto Nussa, R. Sánchez Montalvo, Libertad Torres Grau."

*Resultando:* que contra esta sentencia interpueso la representación de Don Esteban de León Martínez recurso de casación, que le fué admitido; y elevados los autos a esta Corte Suprema, previa citación y emplazamiento de las partes, se tramitó dicho recurso como de apelación, señalándose día para la vista, la que tuvo lugar con asistencia del letrado de la parte apelante.

Abogado del apelante: *Sr. Alvarez Nava.*

Abogado del apelado: *Sr. José de Guzmán Benítez.*

EL JUEZ ASOCIADO SR. HERNÁNDEZ, después de exponer los hechos anteriores, emitió la opinión del tribunal.

*Aceptando* los fundamentos de hecho y de derecho de la sentencia apelada.

Vistas las disposiciones legales que en ella se citan.

*Fallamos:* que debemos confirmar y confirmamos en todas sus partes la sentencia que en 22 de julio de 1902 dictó el Tribunal de Distrito de Ponce, con las costas del recurso a cargo de la parte apelante; y devuélvanse los autos a dicho tribunal con la certificación correspondiente.

Jueces concurrentes: Sres. Presidente Quiñones, y Asociados Figueras, Sulzbacher y MacLeary.